McNEALY, APPELLANT, v. COCHRAN ET AL., APPELLEES.

(Decided September 15, 1937.)

*Mr. Forrest B. Ashcraft*, for appellant.
*Messrs. Jones, Jones & Jones*, for appellees.

SHERICK, J.   This suit is appealed to this court on a question of law, which has to do with the matter of priority of judgment liens.   The agreed statement of facts discloses a happening which may not be unusual but which presents a serious question that does not appear to have been previously considered by an Ohio court.

In 1915, Ray Cochran acquired two parcels of land. He has continued to and does now own these premises. On May 17, 1930, the plaintiff obtained a decree of divorce from her then husband, Ray Cochran. By the terms thereof she was awarded the care and custody of their minor child and the sum of five dollars per week for its support.   These installments were thereby "specifically made a charge and lien against any and

all real estate which the defendant, Ray Cochran, now has.''

Thereafter, on October 28, 1930, Mamie Hooven, a sister of Ray Cochran, procured a judgment against him for $2315.10 upon a cognovit note which bore date of May 7, 1930. Upon this judgment, execution was issued and returned November 19, 1930. The levy made thereon was upon the two parcels mentioned. By subsequent levy this lien was kept alive. It is also stipulated that on October 28, 1930, all amounts due for the child's support were paid.

On November 19, 1935, the plaintiff obtained a modification of the decree of divorce, Cochran having failed to pay the installments ordered to be paid, excepting the sum of $12, and judgment was entered in gross thereon for the sum of $1613 then found due, and upon which execution was issued.

The defendant, Mamie Hooven, by her answer and cross petition asserts that she possesses other liens on the premises, acquired prior to and after the date of the plaintiff's judgment in gross by reason of the payment of taxes, insurance, repairs and payments upon her brother's alimony. The trial court found that, subject to any existing tax liens, Mamie Hooven's lien was senior to that of the divorced wife, who now here complains that in such finding the trial court erred. Counsel for plaintiff concisely puts the presented question for this court's solution in the following manner: ''Do future installments of support money decreed by the court to be specifically a charge upon real estate become, as they fall due or accrue, a superior lien to an intervening lien of a judgment creditor?''

There is no question but that, by the provision of Section 11991, General Code, and its predecessor sections, and perhaps by the court's inherent power, in a divorce and alimony action, installments of money for alimony or support may be made a charge upon a hus-

band's real property. As early as *Olin* v. *Hungerford,* 10 Ohio, 268, it was held, that:

"A decree for alimony, to be paid in installments, does not operate as a lien upon the real estate of the defendant unless made a charge thereon by the decree itself."

And again of recent date, in *Reed* v. *Reed,* 121 Ohio St., 188, 167 N. E., 684, 64 A. L. R., 1384, it was held that a trial court erred in its refusal to allow alimony in a case of that character where service was had by publication. It was concluded that the action was *in rem* and that an alimony decree entered in one county might be made a lien upon the defendant's real property lying within another county of the state. When the note appearing in 79 A. L. R., 252, is examined, it is perceived from the authorities collected that Ohio is found approving of the majority view.

It is further noted that in *Conrad* v. *Everich,* 50 Ohio St., 476, 35 N. E., 58, 40 Am. St. Rep., 679, a decree for alimony payable in gross, although not decreed to be a charge upon the husband's real property operates *per se* as a lien thereon which may be enforced by levy of execution.

It therefore follows that inasmuch as the court which entered the decree of divorce ordered that the installment support payments should be made a "charge and lien" upon the husband's real estate, such did actually become a lien thereon as of the date of the divorce decree. The appellee correctly says that execution may not issue upon an installment alimony decree in this state, and that before such may be done the installments due must be reduced by some procedure to a sum in gross. From this it is argued that an installment decree, although made a lien, cannot actually become such against an intervening judgment creditor until it is reduced to a gross sum and execution issued, and hence her lien has priority over the

plaintiff's lien. We are unable to follow this reasoning.

It is well understood that one may have a lien upon property that at the time is not assertable. For example, the debt secured by a mortgage may not be as yet due, and even when due a mortgagee must perform some act if he would assert his lien, that is, he must institute foreclosure and assert his priority. There is the further case of a duly recorded mortgage wherein the mortgagee is obligated to make future advances. Such a case is found in *Kuhn* v. *Southern Ohio Loan & Trust Co.*, 101 Ohio St., 34, 126 N. E., 820. Therein it was held that the mortgagee was entitled to priority for future advancements made after the filing of a subsequent mortgage. In the case before us the appellant had a duty to perform with respect to her lien, that is, she must reduce her installments to a gross sum due and have execution issue and levy made.

The court in *Buffalo Savings Bank* v. *Hunt*, 118 N. Y. Supp., 1021, in a controversy precisely like the one before us, analyzes *Ackerman* v. *Hunsicker*, 85 N. Y., 43, 39 Am. Rep., 621. The *Ackerman case* is very like the *Kuhn case, supra*. The court in the *Hunt case* then applied the same reasoning to an alimony installment decree. It perceived no difference in principle; neither does this court.

If the parties to this suit are further interested in precedent, pro and con, we direct attention to the notes appearing in L. R. A. 1916B, 651, and 25 L. R. A. (N. S.), 132. In conclusion we direct particular attention to the case of *Isaacs* v. *Isaacs*, 117 Va., 730, 86 S. E., 105, L. R. A. 1916B, 648, wherein the same questions and claims were before the court. It is aptly pointed out that if installment support decrees, made liens in alimony cases, were not awarded priority over intervening judgment liens, a fertile field for the practice of fraud would be encouraged; women, divorced be-

cause of a husband's aggression, and their children whom they are bound to support, would in many instances lose that to which they were morally and legally entitled; the decrees of divorce courts with respect to support of minor children would be ineffectual. This result would disregard the matter of notice as disclosed by a public record. Mamie Hooven, by her pleading, is shown to have had actual knowledge of the decree of divorce. The fact is that she claims a lien in part for alimony payments made by her on behalf of her brother.

We are cognizant of the views of a few jurisdictions which deny a lien to continuing alimony decrees because of the uncertainty of their duration and amount, and the fact that property so encumbered may be difficult of alienation. But after due circumspection we conclude that the reasons for a contrary holding are the sounder and consonant with the more humanitarian view of what the law should be and is as we conceive it.

It therefore follows that the judgment must be and is reversed. Coming now to enter the judgment that the trial court should have entered, it is found that the plaintiff's lien is superior to that of the defendant Mamie Hooven, save and except the tax lien of $146.60 as claimed by her for moneys advanced in the payment of taxes upon the premises. This sum is found, upon principles of subrogation, to be prior to the plaintiff's lien. A decree may be drawn accordingly.

*Decree accordingly.*

MONTGOMERY, P. J., and LEMERT, J., concur.